1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  ROD PERRY,                                    CASE NO. C16-0191JLR

11              Plaintiff,                        ORDER GRANTING MOTION
                                                  TO DISMISS WITH LEAVE TO
12        v.                                      AMEND

13  COLUMBIA RECOVERY GROUP,
    LLC,

14
                Defendant.
15

## I.      INTRODUCTION

16

17        Before the court is Defendant Columbia Recovery Group, LLC's ("Columbia")

18  Federal Rule of Civil Procedure 12(b)(1) motion to dismiss.  (Mot. (Dkt. # 10).)  The

    court has reviewed the motion, all of the parties' submissions related to the motion,
19
    Plaintiff Rod Perry's complaint (Compl. (Dkt. # 1)), other relevant portions of the record,
20

21

22

ORDER- 1

1 and the applicable law.  Being fully advised,[1] the court GRANTS Columbia's motion and

2 dismisses Mr. Perry's complaint without prejudice and with leave to file an amended

3 complaint within 14 days of the filing date of this order.

4 ## II.      BACKGROUND

5          On February 29, 2016, Mr. Perry filed a putative class action complaint alleging

6 that Columbia violated certain provisions of the Fair Debt Collection Practices Act

7 ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  (*See generally* Compl.)  In his complaint, Mr.

8 Perry alleges that he leased an apartment at the Knolls Apartment Complex at Inglewood

9 Hills Apartments ("the Knolls").  (*Id.* ¶¶ 20, 22, Ex. A at 1.)  He alleges that upon

10 terminating his lease, he reached an agreement with the Knolls regarding the amount of

11 his move-out expenses.  (*Id.* ¶ 23.)  He asserts that, despite cashing his check for the

12 agreed upon amount, the Knolls transferred a debt to Columbia for collection.  (*Id.* ¶ 24,

13 Ex. A at 1.)

14          Mr. Perry further alleges that Columbia sent him a letter dated February 18, 2015,

15 in connection with the collection of $477.55 that he allegedly owes to Knolls.  (*Id.* ¶¶

16 25-26, Ex. A (attaching a copy of the February 18, 2015, letter).)  Mr. Perry maintains

17 that the February 18, 2015, letter was Columbia's initial communication with him and

18

19

20

21          [1] Only Columbia requested oral argument on this motion.  (*See* Mot. at 1; Resp. (Dkt. # 14) at 1.)  The court denies Columbia's request because the court does not find that oral argument would be helpful to its disposition of the issues presented.  *See* Local Rules W.D.

22 Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

ORDER- 2

1  that the letter purports to provide certain disclosures required under the FDCPA in 15

2  U.S.C. § 1692g(a).  (*Id.* ¶¶ 27-28.)

3        Columbia's letter to Mr. Perry states:

4        Unless you notify this office within thirty days of receiving this notice that
         you dispute the validity of this debt, or any portion thereof, this office will

5        assume this debt is valid.  If a written dispute is received within thirty days
         this office will obtain verification of the debt and forward the proof of your

6        liability to you.  We will also provide to you the name and address of the
         original creditor if different from the current creditor if a written request is

7        received within thirty days.

8  (Compl. Ex. A at 1.)  Mr. Perry alleges that by stating that his written dispute of the debt

9  "must be *received* within thirty days of the initial communication, rather than *sent* within

10  that time period, [Columbia] overshadowed the notice required by the FDCPA in 15

11  U.S.C. § 1692g(a)(4) by making it appear that [he] had less time in which to submit a

12  dispute than he actually had."  (*Id.* ¶ 29 (italics in original).)  In addition, Mr. Perry

13  alleges that Columbia made "an improper statement" regarding the timeframe in which a

14  consumer may act under 15 U.S.C. § 1692g(a) when Columbia stated that it would

15  provide him with "the name and address of the original creditor if different from the

16  current creditor if a written request is *received* within thirty days."  (Compl. ¶ 30 (italics

17  in original).)

18        Mr. Perry does not allege that he sent a written dispute of the debt to Columbia at

19  any time or that Columbia failed to respond to a written dispute of the debt.  (*See*

20  *generally id.*)  Mr. Perry does not assert that he would have sent a written dispute of the

21  debt to Columbia if it had not been for the alleged errors in Columbia's letter or that the

22  letter confused him.  (*See generally id.*)  Although Mr. Perry alleges that he "reached an

agreement with Knolls regarding the amount of [his] move-out expenses" and that Knolls

cashed his check "for the balance [Knolls] agreed he owed" (*id.* ¶ 23), he does not allege

that his "move-out expenses" form the basis of the debt referenced in Columbia's letter

(*see generally id.*).  Indeed, Mr. Perry never specifically alleges that he disputes the debt

that is the subject of Columbia's letter.  (*See generally id.*)

In his complaint, Mr. Perry seeks an award of "actual damages" under the

FDCPA.  (*Id.* at 9 (Prayer for Relief ¶ c) (citing 15 U.S.C. § 1692k(a)(1)).)  He also seeks

statutory damages under the FDCPA "not exceeding $1,000."  (*Id.* (Prayer for Relief ¶ d)

(citing 15 U.S.C. § 1692k(a)(2)(B)(i)).)  However, in the computation of damages

contained in his Federal Rule of Civil Procedure 26 disclosure statement,[2] Mr. Perry only

claims "statutory damages recoverable under the [FDCPA] pursuant to 15 U.S.C.

§ 1692k(a)(2)(B) in the amount of $1,000.00."  (Hansen Decl. (Dkt. # 11) Ex. A (Dkt.

# 11-1) at 2.)  In response to Columbia's motion, Mr. Perry does assert any damages

other than the statutory damages he describes in his Rule 26 disclosure statement.[3]  (*See*

*generally* Resp.)

_____

[2] Pursuant to Rule 26(a)(1)(A)(iii), a party's initial disclosures must contain a "computation of each category of damages claimed by the disclosing party . . . including materials bearing on the nature and extent of injuries suffered."  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Rule 37(c)(1) further provides that "[i]f a party fails to provide information . . . or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion . . . unless that failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In response to Columbia's motion, Mr. Perry has not argued that he seeks anything other than the statutory damages described in his Rule 26 disclosures.  (*See* *generally* Resp.)

[3] In his Rule 26 computation of damages, Mr. Perry also claims certain damages on behalf of the purported class.  Specifically, he claims "such additional amount as the court may

## III.    ANALYSIS

Columbia asserts that the court lacks subject matter jurisdiction over Mr. Perry's FDCPA claims because Mr. Perry has failed to establish the constitutional minimum for Article III standing under *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540 (2016), *as revised* (May 24, 2016).  Specifically, Columbia argues that Mr. Perry fails to satisfy the injury-in-fact requirement of Article III standing because his allegations and claim for statutory damages constitute nothing more than a "bare procedural violation" of the FDCPA "divorced from any concrete harm."  *Spokeo*, 136 S. Ct. at 1549.

Mr. Perry counters that Columbia misunderstands *Spokeo*.  (*See generally* Resp.)  Mr. Perry contends that *Spokeo* merely clarifies that courts must separately analyze the "concrete" and "particularized" aspects of the injury-in-fact element of Article III standing.  (*See id.*)  He asserts that *Spokeo* did not "overrule four decades of FDCPA case law" or "fundamentally change how our consumer protection laws are enforced."  (*Id.* at 7 (bolding omitted).)  Rather, Mr. Perry emphasizes, the Supreme Court in *Spokeo* was careful to reaffirm that intangible harm, such as "informational injuries" like his, are sufficient to create an injury in fact.  (*Id.* at 12-13.)  Mr. Perry argues that because he received Columbia's letter, which contained alleged violations of the FDCPA, the court should deny Columbia's motion.  (*See id.* at 1, 15.)

---

allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Defendant."  (Hansen Decl. Ex. A at 2.)  Although Mr. Perry "reserves the right to disclose any additional damages suffered throughout the continuing course of discovery," he has not requested any discovery in response to Columbia's motion.  (*See generally* Resp.)

1    The court now considers Columbia's motion to dismiss Mr. Perry's complaint.

2    **A.  Standards**

3    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests the

4 subject matter jurisdiction of the court.  *See* Fed R. Civ. P. 12(b)(1).  If a plaintiff lacks

5 Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and

6 the suit must be dismissed under Rule 12(b)(1).  *Cetacean Cmty. v. Bush*, 386 F.3d 1169,

7 1174 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1).  The party invoking federal jurisdiction

8 bears the burden of establishing standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

9 (1992).

10    "A Rule 12(b)(1) jurisdictional attack may be facial or factual.  In a facial attack,

11 the challenger asserts that the allegations contained in a complaint are insufficient on

12 their face to invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d

13 1035, 1039 (9th Cir. 2004) (citation omitted); *see Wolfe v. Strankman*, 392 F.3d 358, 362

14 (9th Cir. 2004) ("[I]n reviewing a Rule 12(b)(1) motion to dismiss for lack of jurisdiction,

15 we take the allegations in the plaintiff's complaint as true.").  The Ninth Circuit explains

16 that at the pleading stage,

17        [t]o invoke a federal court's subject-matter jurisdiction, a plaintiff needs to
        provide only "a short and plain statement of the grounds for the court's
18        jurisdiction." Fed. R. Civ. P. 8(a)(1).  The plaintiff must allege facts, not
        mere legal conclusions, in compliance with the pleading standards
19        established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 . . . (2007),
        and *Ashcroft v. Iqbal*, 556 U.S. 662 . . . (2009).
20

21 *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  In contrast, in a factual attack,

22 the challenger disputes the truth of the allegations that, by themselves, would otherwise

ORDER- 6

1  invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  When standing is

2  factually attacked, the court may hear evidence before ruling on the issue.  *St. Clair v.*

3  *City of Chico*, 880 F.2d 199, 200-02 (9th Cir. 1989).  Additionally, when considering

4  constitutional standing under either a facial or factual attack, courts may "allow or . . .

5  require the plaintiff to supply, by amendment to the complaint or by affidavits, further

6  particularized allegations of fact deemed supportive of plaintiff's standing."  *Maya v.*

7  *Centex* Corp., 658 F.3d 1060, 1068 (9th Cir. 2011).

8         Here, Columbia challenges the court's jurisdiction from both a facial and factual

9  standpoint.  Columbia challenges the allegations in Mr. Perry's complaint in one respect

10  only—the nature of Mr. Perry's claimed damages.  In his complaint, Mr. Perry seeks an

11  award of "actual damages, pursuant to 15 U.S.C. § 1692k(a)(1)."  (Compl. at 9 (Prayer

12  for Relief ¶ c).)  As noted above, however, Columbia submits a copy of Mr. Perry's Rule

13  26 disclosure statement with its motion to demonstrate that Mr. Perry, in fact, seeks only

14  statutory damages.  (Hansen Decl. Ex. A at 2.)  Thus, the court considers Columbia's

15  motion, at least with respect to the nature of Mr. Perry's damages, as a factual attack.

16  Few procedural limitations exist in a factual challenge to a complaint's jurisdictional

17  allegations.  *St. Clair*, 880 F.2d at 200-02.  For instance, the court may permit discovery

18  before allowing the plaintiff to demonstrate the requisite jurisdictional facts.  *Id.*  Here,

19  however, Mr. Perry has not requested any discovery in response to Columbia's motion.

20  (*See generally* Resp.)  Further, Mr. Perry has not challenged Columbia's assertion that he

21  seeks only statutory damages.  (*See generally id.*)

22

### B.  Article III Standing

The standing doctrine serves to ensure that the authority of federal courts extends only to "cases" and "controversies" as mandated by Article III of the United States Constitution.  U.S. Const. art. III, § 2; *Spokeo*, 136 S. Ct. at 1547.  Standing is a "threshold question" that a litigant invoking federal jurisdiction must demonstrate before the court may hear the case.  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  The "irreducible constitutional minimum of standing" contains three elements:  (1) an "injury in fact" (2) that is "fairly traceable to the challenged action of the defendant" and (3) "likely" to be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (alternations, internal quotation marks, and internal citations omitted).

Columbia's motion focuses on the first element of standing—injury in fact.  (*See* Mot. at 4 ("In this case, [Mr. Perry] fails to satisfy the standing requirement of Article III since there is no injury-in-fact to [Mr. Perry] or to any other class member.").)  To demonstrate an injury in fact, Mr. Perry must show "an invasion of a legally protected interest" that is both "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal quotation marks omitted). The injury "must be concrete in both a qualitative and temporal sense."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).  The injury must be "distinct and palpable, as opposed to merely abstract."  *Id.* (alterations, internal quotation marks, and internal citations omitted).  "'[T]he injury in fact' test requires more than an injury to a cognizable interest.  It requires that the party seeking review be himself among the injured."  *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972).

1    **1.** *Spokeo*

2    The Supreme Court recently revisited the principles of standing and the injury-in-

3 fact element in *Spokeo*, and this opinion is at the heart of Columbia's motion. *Spokeo*

4 involved a class action lawsuit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

5 § 1681e, which imposes various procedural requirements on consumer reporting agencies

6 to ensure credit reporting is fair and accurate.  136 S. Ct. at 1545.  In *Spokeo*, the

7 defendant company compiled profiles of individuals from information in online databases

8 and then provided the profiles to its users through its website.  *Id.* at 1546.  The profiles

9 could include the individual's address, phone number, marital status, approximate age,

10 occupation, hobbies, finances, shopping habits, and musical preferences.  *Id.*  The

11 plaintiff sued the defendant company for violating the FCRA's procedural requirements

12 by allegedly providing incorrect information about the plaintiff to the company's users.

13 *Id.* at 1545-46.  The district court found that the plaintiff failed to allege an injury in fact

14 and dismissed the complaint for lack of standing.  *Id.* at 1546.  The Ninth Circuit reversed

15 the district court and held that the plaintiff's injury "satisfied the injury-in-fact

16 requirement of Article III" because the defendant "violated [the plaintiff's] statutory

17 rights, not just the statutory rights of other people." *Id.*

18    The Supreme Court reversed the Ninth Circuit because the Ninth Circuit's injury-

19 in-fact analysis focused exclusively on whether the plaintiff's injury was particularized.

20 *Id.* at 1550.  The Supreme Court emphasized that to satisfy the injury-in-fact element of

21 Article III standing, the plaintiff's injury must be both particularized and concrete.  *See*

22

1  *id.*  The Court, therefore, remanded the case to the Ninth Circuit so that it could complete

2  its standing analysis and consider the concreteness of the plaintiff's injury.  *Id.*

3        In remanding, the Supreme Court emphasized that to be concrete an injury "must

4  be '*de facto*'; that is, it must actually exist."  *Id.* at 1548.  However, the Supreme Court

5  also explained that "concrete" does not necessarily mean "tangible."  *Id.* at 1549.  An

6  intangible harm, such as the loss of one's right to free speech or to religious practice, can

7  constitute a concrete injury.  *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460

8  (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993)

9  (free exercise)).  Both history and the judgment of Congress play important roles in

10  determining whether an intangible harm constitutes an injury in fact.  *Id.*  Courts should

11  consider whether an alleged intangible harm "has a close relationship to a harm that has

12  traditionally been regarded as providing a basis for a lawsuit in English or American

13  courts."  *Id.*  Further, "because Congress is well positioned to identify intangible harms

14  that meet minimum Article III requirements, its judgment is also instructive and

15  important."  *Id.*  Indeed, "Congress may 'elevat[e] to the status of legally cognizable

16  injuries, *de facto* injuries that were previously inadequate in law.'"  *Id.* (alterations in

17  original) (quoting *Lujan*, 504 U.S. at 578).  However, a plaintiff does not "automatically

18  satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right

19  and purports to authorize that person to sue to vindicate that right."  *Id.*  "Article III

20  standing requires a concrete injury even in the context of a statutory violation."  *Id.*  A

21  plaintiff may not "allege a bare procedural violation, divorced from any concrete harm,

22  and satisfy the injury-in-fact requirement of Article III."  *Id.*

1   Further, in certain circumstances, "the risk of real harm" is enough to satisfy the

2   concreteness requirement.  *Id.*  For example, the Supreme Court noted that harms

3   associated with certain torts can be difficult to prove or measure.  *Id.* (citing libel and

4   slander as examples).  Thus, the Court acknowledged that in some circumstances the

5   violation of a procedural right granted by a statute could be sufficient to constitute an

6   injury in fact, and in such cases, the plaintiff need not allege any additional harm beyond

7   the harm Congress had identified.  *Id.* at 1549-50.  In so ruling, the Supreme Court cited

8   two prior cases involving informational injuries.  *Id.* (citing *Fed. Election Comm'n v.*

9   *Akins*, 524 U.S. 11, 20-25 (1998) (confirming that a group of voters' "inability to obtain

10  information" that Congress had decided to make public was a sufficient injury in fact to

11  satisfy Article III); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding

12  that two advocacy organizations' failure to obtain information subject to disclosure under

13  the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide

14  standing to sue")).

15  Based on these guiding principles, the *Spokeo* Court distilled two concepts from

16  the FRCA case before it.  First, Congress "sought to curb the dissemination of false

17  information by adopting procedures designed to decrease that risk." *Id.* at 1550.  Second,

18  the plaintiff could not "satisfy the demands of Article III by alleging a bare procedural

19  violation." *Id.*  The Supreme Court concluded that a violation of FRCA could result in no

20  harm at all—if, for example, despite a failure to provide the required notice under the

21  statute, the information provided was entirely accurate, or the inaccuracy was so

22  immaterial that it caused no harm or material risk of harm.  *Id.*  Based on the foregoing

1    insights, the Supreme Court vacated and remanded the case to the Ninth Circuit so that it

2    could complete its standing analysis and, in particular, consider the concreteness of the

3    plaintiff's alleged harm.  *Id.*

4        **2.  Mr. Perry's FDCPA Claims**

5        With the *Spokeo* analytical framework firmly in mind, the court must determine

6    whether the alleged FDCPA violations in Mr. Perry's complaint satisfy the concreteness

7    requirement of the injury-in-fact component of Article III standing.  Mr. Perry alleges

8    that the letter he received from Columbia violated certain disclosure requirements of the

9    FDPCA.  (*See* Compl. ¶¶ 29-30, 52-54.)  The purpose of the FDCPA is "to eliminate

10   abusive debt collection practices by debt collectors, to insure that those debt collectors

11   who refrain from using abusive debt collection practices are not competitively

12   disadvantaged, and to promote consistent State action to protect consumers against debt

13   collection abuses."  15 U.S.C. § 1692(e).  The FDCPA fulfills this purpose in part by

14   requiring a debt collector to provide the consumer with written notice of the consumer's

15   rights to dispute and seek verification of an alleged debt and to obtain the name and

16   address of the original creditor within 30 days after receiving notice of the debt from a

17   debt collector.  *Id.* §§ 1692g(a)(4)-(5), 1692g(b).  If a consumer exercises these rights, the

18   debt collector must "cease collection of the debt" until the debt collector provides

19   verification of the debt or the name and address of the original creditor.  *Id.* § 1692g(b).

20   Debt collectors must inform consumers of these rights in a written notification "[w]ithin

21   five days after the initial communication with a consumer in connection with the

22   collection of any debt."  *Id.* § 1692g(a).  Furthermore, "[a]ny collection activities and

1    communication during the 30-day period may not overshadow or be inconsistent with the

2    disclosure of the consumer's right to dispute the debt or request the name and address of

3    the original creditor." *Id.* § 1692g(b).

4         Mr. Perry alleges that Columbia violated the FDCPA by stating in its February 18,

5    2015, letter that Mr. Perry was required to send a written dispute of the debt or request

6    for the name and address of the original creditor "such that it would be received by

7    [Columbia] within 30 days of [Mr. Perry's] receipt of [Columbia's] letter." (Compl.

8    ¶ 54.)  Mr. Perry contends that Columbia's letter improperly shortens the period in which

9    he may dispute his debt or send a request for information and is inconsistent with his

10   rights under the FDCPA, "which allow the consumer thirty [30] days in which to initiate

11   the dispute or send the request." (*Id.*)

12        Under *Spokeo*, a violation of the FDCPA does not automatically constitute an

13   injury in fact.  136 S. Ct. at 1549 ("Congress' role in identifying and elevating intangible

14   harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

15   whenever a statute grants a person a statutory right and purports to authorize that person

16   to sue to vindicate that right.").  "[A] bare procedural violation [of a statute] divorced

17   from any concrete harm" cannot confer Article III standing.  *Id.*  For example, the *Spokeo*

18   Court stated that even if a consumer reporting agency violated the FCRA by "fail[ing] to

19   provide the required notice to a user of the agency's consumer information," no concrete

20   harm would result if that information was in fact accurate.  *Id.* at 1550.  The Court also

21   remarked that "[i]t is difficult to imagine how dissemination of an incorrect zip code,

22   without more, could work any concrete harm." *Id.* (footnote omitted).  Thus, under

*Spokeo*, not all failures to give statutorily mandated notice or accurate information "cause harm or present any material risk of harm." *Id.*

Mr. Perry contends that the letter he received from Columbia did not properly inform him of his right to dispute the debt or to request the name and address of the original debtor because the letter improperly shortened the time in which he could send a written dispute of the debt or request for information. (Compl. ¶¶ 29-30, 54.) However, although Mr. Perry alleges that he "reached an agreement with Knolls regarding the amount of [his] move-out expenses" (*id.* ¶ 23), he does not allege that these move-out expenses are the basis for the debt identified in Columbia's letter or any other facts asserting that the debt was erroneous (*see generally id.*) Furthermore, Mr. Perry does not allege that he ever attempted or even intended to dispute the debt cited in Columbia's letter. (*See generally id.*). He also never alleges that he attempted or intended to request the name and address of the original creditor. (*See generally id.*) Finally, he does not allege that Columbia failed to provide any of the statutorily required information concerning his debt in response to a written dispute or request. (*See generally id.*) In other words, the court cannot reasonably infer from Mr. Perry's allegations that he suffered the type of harm the disclosure requirements of 15 U.S.C. § 1692g were designed to prevent. This is similar to the Supreme Court's illustration in *Spokeo* of a bare statutory violation that would not amount to a concrete injury. *See* 136 S. Ct. at 1550 ("A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a

1   user of the agency's consumer information, that information regardless may be entirely

2   accurate.").

3        Although Mr. Perry does not allege that he experienced the type of harm the

4   FDCPA disclosure requirements are designed to prevent as a result of his receipt of

5   Columbia's letter, "the *risk* of real harm [can also] satisfy the requirement of

6   concreteness." *Spokeo*, 136 S. Ct. at 1549 (italics added).  Certainly, "[i]f a consumer

7   contends that alleged debt is incorrect, or merely wishes to verify the debt, then a

8   deficient disclosure of their [sic] FDCPA rights could create a risk of real harm because a

9   consumer could inadvertently forfeit their right to validate the debt." *Jackson v.*

10  *Abendroth & Russell, P.C.*, --- F. Supp. 3d ----, 2016 WL 4942074, at *6 (S.D. Iowa

11  Sept. 12, 2016) (citing *Riss v. Messerli & Kramer, P.A.*, No. 11-2307, 2011 WL 5506290,

12  at *4 (N.D. Minn. Nov. 10, 2011) (finding a consumer intending to dispute his debt was

13  misled by a letter demanding immediate payment before the 30-day validation window,

14  which "suggested that [the consumer] was out of time and no longer had the option to

15  dispute his debt.")).  However, Mr. Perry's receipt of Columbia's allegedly deficient

16  letter did not create the "risk of real harm" that he would be confused or misled as to his

17  rights under federal law as the target of a debt collector because, as indicated above, he

18  did not allege that the debt was incorrect or that he ever intended to dispute the debt or to

19  request the name or address of the original creditor.  (*See generally* Compl.)

20       In addition, however, the *Spokeo* Court also recognized that an intangible harm

21  can constitute an injury in fact.  136 S. Ct. at 1549.  "In determining whether an

22  intangible harm constitutes injury in fact, both history and the judgment of Congress play

important roles." *Id.* "[I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* The judgment of Congress is "also instructive and important" because "Congress may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* (alteration in original) (quoting *Lujan*, 504 U.S. at 578). Accordingly, some procedural violations of statutes are, on their own, sufficient to constitute an injury in fact. *Id.* at 1549-50. In such circumstances, "a plaintiff . . . need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549.

The *Spokeo* Court cited two cases as examples of when a statutory procedural violation alone constitutes an intangible but nevertheless concrete injury: *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), and *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). *Spokeo*, 136 S.Ct. at 1549-50. The *Akins* Court addressed whether an organization had to publicly disclose certain information under the Federal Election Campaign Act. 524 U.S. at 13-14. The *Akins* Court noted the purpose of the Act is "to remedy any actual or perceived corruption of the political process" by, among other means, "impos[ing] extensive recordkeeping and disclosure requirements upon groups that fall within the Act's definition of a 'political committee.'" *Id.* at 14. The *Akins* Court found the plaintiff voters' "inability to obtain information" about the organization's donors was a concrete and particular injury in fact. *Id.* at 21. In *Public Citizen*, various public interest groups sued the Department of Justice under the Federal Advisory Committee Act for failing to disclose the names of potential federal judicial

1    nominees.  491 U.S. at 447.  In rejecting a challenge for lack of standing, the *Public*

2    *Citizen* Court concluded that the "refusal to permit [the plaintiffs] to scrutinize the ABA

3    Committee's activities to the extent [the Federal Advisory Committee Act] allows

4    constitutes a sufficiently distinct injury to provide standing to sue." *Id*. at 449.

5        Mr. Perry argues that the injuries he suffered by being denied information under

6    the FDCPA are analogous to the injuries in *Akins* and *Public Citizen*.  (*See* Resp. at 12-

7    13.)  Mr. Perry argues that, under *Spokeo*, "when a statute requires information to be

8    disclosed, plaintiffs need show nothing more than that they were denied the information

9    to which they were entitled," and they need not show "that the absence of the information

10   resulted in some additional, consequential harm flowing from the statutory violation

11   itself." (*Id.* at 13.)  He contends that this principle "applies equally to [his] claim under

12   the FDCPA." (*Id.*)  Thus, Mr. Perry argues that a violation of the FDCPA's disclosure

13   requirements alone is an intangible harm sufficient to confer Article III standing. (*See*

14   *id.*)

15       However, the Supreme Court found Article III standing in *Akins* and *Public*

16   *Citizen* because the respective procedural violations were tied to concrete harms and not

17   merely because the plaintiffs were denied access to information.  In *Akins*, the failure to

18   obtain information prevented the plaintiffs from "evaluat[ing] candidates for public office

19   . . . [and] the role that [an organization]'s financial assistance might play in a specific

20   election." 524 U.S. at 21.  In *Public Citizen*, the failure to obtain information prevented

21   the plaintiffs from "seek[ing] access to the ABA Committee's meetings and records in

22   order to monitor its workings and participate more effectively in the judicial selection

1    process." 491 U.S. at 449. Each injury represented the very harm that the respective

2    statutes were designed to prevent. *See Akins*, 524 U.S. at 14 ("[T]he [Federal Election

3    Campaign Act] seeks to remedy any actual or perceived corruption of the political

4    process."); *Public Citizen*, 491 U.S. at 446 ("[O]ne purpose [of the Federal Advisory

5    Committee Act] was to ensure . . . that Congress and the public remain apprised of [new

6    advisory committees'] existence, activities, and cost."). For this reason, the plaintiffs in

7    *Akins* and *Public Citizen* did not have to "allege any *additional* harm beyond the one

8    Congress . . . identified." *Spokeo*, 136 S. Ct. at 1549 (italics in original). Contrary to Mr.

9    Perry's contention, the procedural violations in *Akins* and *Public Citizen* were not

10   concrete because the cases involved denying access to statutorily mandated information.

11   Indeed, the *Spokeo* Court expressly rejected Mr. Perry's position when it stated that the

12   failure to provide a statutorily required notice "may result in no harm." *Id.* at 1550.

13       The FDCPA's purpose is "to eliminate abusive debt collection practices by debt

14   collectors." 15 U.S.C. § 1692(e). "The statute seeks 'to protect consumers from a host of

15   unfair, harassing, and deceptive debt collection practices.'" *Jackson*, 2016 WL 4942074,

16   at *9 (quoting S. Rep. No. 95-382, at 1 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695).

17   Section 1692k creates civil liability for "any debt collector who fails to comply with any

18   provision of this subchapter with respect to any person." 15 U.S.C. § 1692k. "Congress

19   plainly intended to elevate violations of the FDCPA 'to the status of legally cognizable

20   injuries.'" *Jackson*, 2016 WL 4942074, at *9 (quoting *Lujan*, 504 U.S. at 578). Further,

21   "the harms resulting from abusive debt collection practices are closely related to harms

22   that traditionally provided a basis for relief in American and English courts, such as

1  fraud." *Id.* (citing *S. Dev. Co. v. Silva*, 125 U.S. 247, 250 (1888) (defining the legal

2  elements of a civil fraud); *Pasley v. Freeman* (1789) 100 Eng. Rep. 450 (K.B.) 450 ("A

3  false affirmation, made by the defendant with the intent to defraud the plaintiff, whereby

4  the plaintiff receives damage, is the ground of an action upon the case in the nature of

5  deceit."); Restatement (Second) of Torts § 525 (1977) (discussing fraudulent

6  misrepresentation)).  Thus, under the FDCPA, consumers have a substantive right to be

7  free from debt collector abuse, and the statute mandates various procedures to accomplish

8  this goal and decrease the risk of harm related to these practices.  *Id.*  In general, each of

9  these procedures helps to prevent abusive practices, but "this does not mean their

10  violation automatically amounts to the injury identified by Congress in the statute." *Id.*;

11  *Spokeo*, 136 S. Ct. at 1550 ("A violation of one of [a federal statute's] procedural

12  requirements may result in no harm.").

13      Mr. Perry alleges that Columbia violated 15 U.S.C § 1692g.  (Compl. ¶¶ 29-30,

14  52-54.)  The purpose of this provision is to "eliminate the recurring problem of debt

15  collectors dunning the wrong person or attempting to collect debts which the consumer

16  has already paid." *Jackson*, 2016 WL 4942074, at *10 (citing S. Rep. No. 95-382, at 4).

17  To prevent this, the provision provides consumers with the right to dispute the debt and

18  obtain the name and address of the original creditor.  15 U.S.C. §§ 1692g(a), (b).  A debt

19  collector must provide the consumer written notice of these rights within five days after

20  its initial communication with the consumer.  *Id.* § 1692g(a).  In addition, the written

21  notice cannot "overshadow or be inconsistent with [these required disclosures]." *Id.*

22  § 1692g(b).  These requirements are procedural rights designed to decrease the risk of

injury identified by Congress in the FDCPA—abusive debt collection practices.  *Jackson*, 2016 WL 4942074, at *10.  "Although violating these procedural rights may result in the harm identified by Congress, it does not result in such an injury on its own, unlike the procedural violations in *Akins* and *Public Citizen.  See id.*  Based on the foregoing analysis, the court finds that the bare procedural violations of sections 1692g(a) and (b) of the FDCPA alleged by Mr. Perry do not amount to a concrete injury.  Accordingly, as presently alleged, Mr. Perry lacks standing to assert his claims, and the court therefore lacks subject matter jurisdiction.[4]

For these reasons, the court GRANTS Columbia's motion to dismiss and dismisses Mr. Perry's complaint without prejudice and with leave to amend.  As indicated above, Mr. Perry's failure to allege a concrete injury may reflect a mere

_____

[4] In a recent unpublished decision, the Eleventh Circuit concluded that a violation of the FDCPA's disclosure requirements results in injury to a consumer's "right to information" under the Act.  *Church v. Accretive Health, Inc.*, --- F. App'x ----, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (per curiam) ("[T]hrough the FDCPA, Congress has created a new right—the right to receive the required financial disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures.").  The court respectfully does not share the *Church* panel's expansive reading of *Spokeo.  See Nokchan v. Lyft, Inc.*, No. 15-CV-03008-JCS, 2016 WL 5815287, at *8 (N.D. Cal. Oct. 5, 2016) (quoting *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 PKC AKT, 2016 WL 4099109, at *6 (E.D.N.Y. Aug. 2, 2016)) ("The Court is not bound by [the *Church*] decision, and respectfully disagrees with it, based on this Court's conclusion that the cases cited in *Spokeo* as examples of intangible harm sufficient to confer standing, i.e., *Akins* and *Public Citizen*, involved interests of much greater and broader significance to the public than those at issue in *Church*.").

Although the bare procedural violations of the FDCPA in sections 1692g(a) and (b), as alleged here, do not amount to a concrete injury, violations of other FDCPA provisions may be sufficient on their own to constitute an Article III injury in fact.  *See, e.g., Linehan v. Allianceone Receivables Mgmt., Inc.*, No. C15-1012-JCC, 2016 WL 4765839, at *8 (W.D. Wash. Sept. 13, 2016) (ruling that the plaintiff's allegations that the defendant violated the venue provision of the FDCPA, 15 U.S.C. § 1692i(a)(2), articulated a concrete harm sufficient to satisfy the *Spokeo* standard for Article III standing).  Thus, the court's holding is limited to the facts alleged in this case and the disclosure requirements of Section 1692g of the FDCPA.

1   pleading defect rather than a fundamental problem with his claim.  Accordingly, the court

2   permits Mr. Perry the opportunity to amend his complaint to allege Article III standing

3   consistent with the Supreme Court's ruling in *Spokeo* and this court's application of that

4   ruling to his claims.  *See Maya*, 658 F.3d at 1069 (affirming a Rule 12(b)(1) dismissal for

5   lack of standing, but permitting leave to amend on remand "because plaintiffs may be

6   able to establish by amendment that they have standing to pursue their claims").  Mr.

7   Perry must file his amended complaint within 14 days of the filing date of this order.  If

8   Mr. Perry fails to file an amended complaint within that timeframe or fails to adequately

9   allege Article III standing in his amended complaint, the court will dismiss his complaint

10  without further leave to amend.

11                    **IV.    CONCLUSION**

12          Based on the foregoing analysis, the court GRANTS Columbia's motion to

13  dismiss (Dkt. # 10).  The court DISMISSES Mr. Perry's complaint without prejudice and

14  with leave to amend.  Mr. Perry must file his amended complaint that adequately alleges

15  Article III standing within 14 days of the filing date of this order or the court will dismiss

16  his complaint without further leave to amend.

17          Dated this 19th day of October, 2016.

18

19

20          _____
            JAMES L. ROBART
21          United States District Judge

22

ORDER- 21